STEPHEN R. FISK, Plaintiff, *v.* MARY FRANCES FISK, Defendant.

(New York Superior Court—Equity Term, May, 1895.)

A representation by a female that she is a maiden, when in fact she is a widow or a divorced woman having legal capacity to remarry, or by a man that he is a bachelor, when in fact he is a widower or a divorced man having legal capacity to remarry, is not such a fraud as will authorize the annulment of a marriage.

BILL filed by plaintiff for annulment of marriage.

*A. Oakey Hall* and *J. P. Niemann,* for plaintiff.

*J. C. Coleman,* for defendant.

McADAM, J.   The plaintiff grounds his action upon the charge that the defendant falsely represented to him that she had never been previously married, when in fact she had been married to one Benjamin F. White, who was living at the time; the plaintiff being by such misrepresentation induced to marry the defendant.

While it is true that the defendant had been previously married to White, and that he was living at the time, it appears by an exemplified copy of the record of the Court of Common Pleas for the county of Philadelphia that the defendant had obtained an absolute divorce from White in that court at the September term, 1858, and that she was competent when the representations were made to contract marriage, particularly in the state of Pennsylvania, where such divorce was procured.   The marriage with the plaintiff was contracted June 3, 1862, and was solemnized in Pennsylvania.   So that

the contract, apart from the question of fraud, was valid everywhere.

Assuming that the alleged representations were made, that they were untrue, that the plaintiff was deceived by them and induced to enter into a contract which he would not have made if he had known the facts, the question to be determined is whether the deceit was of that serious character which authorizes an annulment of the marriage.

Marriage is the cornerstone of the social fabric ; and, unlike other contracts, that of marriage cannot be rescinded by the voluntary act of the parties. Indeed, the statute does not provide that fraud shall vitiate a contract of marriage, but only confers an authority on the court to decree an annulment for such cause, if the nature of the fraud or the degree or amount of deception practiced be deemed sufficient to warrant the court in declaring the contract void. Code, § 1743. This is left to be determined on general principles applicable to all contracts, subject only to such restrictions and modifications as necessarily arise and grow out of the peculiar nature of the contract of marriage. *Reynolds* v. *Reynolds*, 3 Allen, 606.

The law, in the exercise of a wise and sound policy, seeks to render the contract of marriage, when once executed, as far as possible indissoluble. The great object of marriage in a civilized and Christian community is to secure the existence and permanence of the family relation and to insure the legitimacy of offspring.

In *Long* v. *Long*, 77 N. C. 308, the court said : " There is in general no safe rule but this : That persons who marry agree to take each other as they are * * * ; and we cannot but say that nothing could be more dangerous than to allow those who have agreed to take each other in terms for better, for worse, to be permitted to say that one of the parties is worse than expected." Similar expressions will be found in *Farr* v. *Farr*, 2 McArth. 36 ; *Carris* v. *Carris*, 24 N. J. Eq. 522, and in 2 Bish. Mar. & Div. (ed. of 1891) §§ 459, 460.

In short, the one takes the other for better or worse, with all his or her past or present imperfections, and there is

no going behind the ceremony. It may, therefore, be laid down as settled law that if a female represents herself as a maiden, and it turns out she is a widow, or a divorced woman having the legal capacity to remarry; or a man represents himself as a bachelor, when he is a widower or a divorced man having the legal capacity to remarry, the misrepresentation would not go to the foundation of the marriage contract; it would be one of those frauds for which the law affords no relief. *Clarke* v. *Clarke*, 11 Abb. Pr. 228. And this upon the ground that the most serious considerations of public policy and good morals affect the relation and demand that it should be indissoluble except for the gravest causes.

The law wisely requires that persons who act on representations or belief in regard to such matters should bear the consequences which flow from contracts into which they have voluntarily entered, after they have been executed, and affords no relief for the results of " a blind credulity, however it may have been produced." *Reynolds* v. *Reynolds, supra*, 607, 608; 2 Kent's Comm. 77.

It follows that the complaint must be dismissed.

Ordered accordingly.